The opinion of the Court was delivered by
Dar&an, Ch.
The first question which would naturally arise in the discussion of this case is that which is made in the fifth and last ground of appeal, and relates to the competency of several witnesses, which the Chancellor, on the circuit trial, held to be incompetent; the correctness of which decision is called in question by this appeal.
This is a creditor’s bill. The plaintiffs, Guignard, Neuffer, Jos. J. Harley, and Hays, in behalf of themselves and all others, the creditors of William J. Harley, who shall come in and contribute to the expenses of this suit, complain that a judgment against the said William J. Harley in favor of A. P. Aldrich, for the sum of $15,102 1.9, bearing date the 9th day of March, 1848, was fraudulent and void against the creditors of the said William J. Harley. They also complain, that on the 3d day of September, 1848, one N. G. W. Walker, Sheriff of Barnwell District, under and by virtue of sundry writs of fieri facias, and in foreclosure of sundry mortgages, offered and exposed for sale, and did sell, at public auction, all of the visible property of the said W. J. Harley, except an inconsiderable portion thereof; that at said sale, A. P. Aldrich became the purchaser of several tracts, of land, which are par *270 ticularly described in the bill, and of thirty-three slaves that are described by their names, and of horses, mules, &c. The allegation further is, that the purchase by Aldrich of said real and personal property was fraudulent, null and void, by reason of an illegal and corrupt bargain between the said Aldrich and the said Harley, that the said Aldrich should purchase and hold the said property for the benefit of the said Harley, in fraud of and to the injury of the latter’s creditors. This is substantially the complaint of the bill, though there are many and minute specifications of these charges. Inter alia, the plaintiffs pray that the judgment confessed by W. J. Harley to Alfred P. Aldrich for $15,102 19, entered 23d March, 1848, be vacated and set aside, and that the said Alfred P. Aldrich be required to accouut for and pay over to the execution creditors of the said William, J. Harley all moneys heretofore received by him on said judgment, with interest; and that a judgment confessed by W. J. Harley to Alfred P. Aldrich, John J. Ryan, William H. Peyton, and Jos. T. Harley, for $15,000, entered 24th March, 1849, be set aside as to the rights of A. P. Aldrich and John J. Ryan therein, &c. And that the said Alfred P. Aldrich be required to account for and pay over to the execution creditors of the said IV. J. Harley all such sums of money, and the interest thereon, as have heretofore been received by him from sales of any portion of the property aforesaid. They also pray for general relief.
On the trial, for the purpose of substantiating the charges of fraud against Aldrich and Harley, the plaintiffs called a number of witnesses; some of whom were execution creditors, and some simple contract creditors of the said Harley. Their evidence was taken very fully by the Commissioner, under protest, and subject to the objection of their being incompetent. The question as to their competency was raised on the circuit trial, and the Chancellor held them to be incompetent. It is again raised on this appeal, and this Court concurs with the Chancellor.
It seems to me that a bare statement of the case shows the *271 judgment creditors to be incompetent. It is a creditor’s bill, to which any creditor of Harley may make himself a party by application to the Court at any time during the progress of the cause. The prayer of the bill is that the judgment in favor of Aldrich be set aside, and that all the moneys, with interest thereon, which he has received on said judgment, be paid over to the execution creditors of the said Harley; that is to say, to the very parties who are now brought forward as witnesses to prove the fraud by which the judgment in favor of Aldrich is to be set aside, and the money he recovered thereon be paid over to themselves. It is impossible to conceive a more direct interest in the event of the suit. The case is different from the common one of a creditor testifying in favor of his debtor, by which the debtor’s estate may be enlarged, and the probability increased of his being able to pay the debt due to the witness. In that case, the witness is interested more or less, according to the pecuniary resources of the debtor. Such an interest does not exclude his testimony, but goes to his credibility. He has no immediate and direct interest in the event of the suit.
In the same way and upon the same principles, the simple contract creditors of Harley are incompetent as witnesses. If the fraud is established, and the prayer of the bill is granted; if the judgment in favor of Aldrich be vacated, and his purchases declared fraudulent and void, then, as a necessary legal consequence, he would be decreed to account for the mesne rents and profits, and these rents and profits would be equitable assets. And in like manner, if the prayer of the bill in reference to the purchase of the Isaac’s land from Smets be granted, and that land be decreed to be sold for the benefit of Harley’s creditors, the proceeds of such sale would be equitable assets. Equitable assets are always distributed, in this Court, joro rata among all the creditors. The simple contract creditors are allowed to come in on equality with judgment creditors. It is obvious, therefore, that the testimony of- any simple contract creditor, called as a witness to prove the frauds *272 charged in this bill, tends directly to create a fund out of which his own debt would or might be paid. Any witness, therefore, who was a simple contract creditor of Harley was incompetent to testify against the defendants in this case. All the evidence given by the creditors of Harley must be ruled out. And when, in addition to this, all thatjpart of the testimony which relates to the declarations of Harley, which is confessedly incompetent, is also excluded, there is very little left to support the allegations of the bill.
But we are of opinion that if all the evidence hereby excluded, were held to.be competent and admissible, it would still be insufficient to entitle the plaintiffs to the relief which they ask of the Court. Upon the whole evidence, and considering the time, and all the circumstances attending the sale, the Court cannot see otherwise than that the prices were as full and fair as could have been reasonably expected. There is no proof of any interference with the sales on the part of Aldrich. In fact, he endeavored to procure their postponement. It is not shewn that he or any one else endeavored to suppress or check competition. The bidding was full and animated, and the property was knocked down to him, because his bids were the highest. The Court has looked with a scrutinizing eye into the circumstances attending these sales, and has perceived no feature that can, in justice, be considered as casting a reasonable suspicion upon it. Undue weight, in the view of the plaintiffs, has been attached to the fact that Harley reriiained in possession of the property after the sale. In the first place, the principle that the vendors remaining in possession of the property is a badge of fraud, does not apply to Sheriff’s sales, as has been shewn in the Circuit decree. Conceding the sale to»have been fair, and the prices full, and at that conclusion we have arrived, what mischief or injustice is there to any one, if the defendant in execution is permitted by the purchaser to> resume the possession of the property which has been sold ? Suppose it to have been proved that Aldrich, before the sale, had said to *273 Harley, that if he purchased his property he would let him have it back, and give him an opportunity of redeeming it; and that after his purchase he had fulfilled this promise and agreement; and Harley had, accordingly, resumed the possession of his property — the sales being otherwise fair, and the prices adequate, where is the fraud or vice of such an arrangement ? My impression is, that such arrangements at the calls of friendship, are not at all infrequent, nor condemned by any legal or moral obligation. In this case the bids of Aldrich were all accounted for and paid in to the Sheriff, and by him have been distributed and applied to the-executions, according to their priority. None of the execution creditors whose executions have been satisfied, can or do complain; nor have those whose executions have not been reached, a right to complain, provided the sale was fairly conducted and the prices full. These propositions are not controverted, but it is contended that the fact that Harley after the sale went immediately into the possession of the whole property purchased by Aldrich, being nearly the whole that was sold, raises an irresistible presumption that Aldrich’s purchases were paid for by Harley’s funds. There might be considerable force in this assumption, if it had been shewn that Harley had the possession or control of funds sufficient to have carried out such a fraudulent arrangement, and that Aldrich had not. In the first place, Aldrich and Harley answering to the pointed interrogatories of the plaintiff’s bill, positively deny that the purchases of Aldrich were effected by any pecuniary aid from Harley. It is not shewn that Harley, had the necessary funds for such a scheme. The presumption is the contrary. He would not willingly have suffered this total wreck of his fortunes to have taken place, and himself and family reduced to a state of dependence and beggary. It . further appears that Aldrich obtained the legitimate control of some of the executions, on which the proceeds of the sale would apply, and by the assistance of friends, raised funds to a sufficient extent at least, to repel any necessary or probable *274 inference that his purchases were paid for by Harley’s money.
A vehement effort has been made to shew that the confession of judgment by Harley to Aldrich for $15,102.18, is fraudulent. This Court perceives no reasons for believing that this judgment was based upon fictitious considerations. The plaintiffs have purged the defendants consciences by an answer, on oath, to their charge of fraud in this respect. Both Aldrich and Harley, on oath, have denied the allegation of fraud. So far from the answers having been impeached by two witnesses, or by one and corroborating circumstances, they have been strengthened by the investigation. The particulars of the schedule filed with the confession, as being the consideration of the note on which the confession was given, have been verified to a considerable extent. Nor have thex plaintiffs been able to disprove that schedule in a single particular. It is shewn by an unimpeachable witness that Harley was reluctant to give the confession. When first appealed to by Aldrich, he hesitated. He expressed surprise at the magnitude of Aldrich’s aggregate demand. Without consenting or refusing, he took time to consider, and several days afterwards gave the confession. This is totally unlike the conduct of two confederate parties, concocting a fraudulent, confession of judgment to defeat just creditors.
In regard to the question made in this appeal concerning the transaction of Aldrich with Smets about the Isaac’s land, I deem it necessary to add very little to what has been said on this subject in the circuit decree. I do not perceive that there was any resulting trust, as the plaintiffs contend; for the land was not bought "with Harley’s, but with Smet’s funds. But I j I do not think that this view about the resulting trust is very \ material. Harley certainly had an equity to demand a title ,* from Smets on discharging the equitable claims of Smets. Before he could have a right to demand a title from Smets, he \ must not only have paid up the purchase money in full, but all claims of Smets against him on account. This was *275 Harley’s equity; call it a resulting trust, or by any other name It was a mere right of action, like any other chose. It was not bound by the executions, nor subject to any other liens. Unfettered by liens of any kind, it was entirely subject to Harley’s control. He had a right to waive, and did waive his equity as against Smets, and consented that the latter should convey the land to Aldrich. This is fully established by the ^testimony of Smets. The price paid by Aldrich for the land was about 11,800; how much less than its value does not appear. I cannot perceive any fraud in this transaction.
It is not my purpose to follow the learned and ingenious counsel of the'plaintiffs through all the minutiae of his zealous and protracted argument. It is not necessary that I should do so, nor would it be profitable. Suffice it to say that this Court concurs fully with the Chancellor who heard the cause on circuit in the views which he has taken.
It is ordered and decreed, that the circuit decree be affirmed, and the appeal be dismissed.
Dunkin and Wahdlaw, CC., concurred.
Appeal dismissed.